UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

June 2, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Angela W. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-1763-BAH

Dear Counsel:

On July 19, 2022, Plaintiff Angela W. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 8), the parties' cross-motions for summary judgment[1] (ECFs 12 and 14), and Plaintiff's reply (ECF 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on May 9, 2018, alleging a disability onset of February 28, 2012. Tr. 165–73. Plaintiff's claim was denied initially and on reconsideration. Tr. 128–32, 138–44. On October 24, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 38–66. Following the hearing, on December 3, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 17–37. The Appeals Council denied Plaintiff's request for review of that decision, Tr. 1–7, so Plaintiff sought review of the decision in this Court, which remanded Plaintiff's case to the SSA on September 21, 2021. Tr. 1050–53. On remand, a different ALJ held a hearing on April 21, 2022. Tr. 1009–30. On May 12, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 987–1008. This decision constitutes the final, reviewable decision of the SSA. *Sims*

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, however, both parties filed motions for summary judgment. *See* ECFs 12, 14.

[2] 42 U.S.C. §§ 301 et seq.

*v. Apfel*, 530 U.S. 103, 106–07 (2000); 20 C.F.R. § 404.984(d); *see also id.* § 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date . . . through her date last insured[.]" Tr. 992. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease, fibromyalgia, and obesity[.]" *Id*. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "migraines" and "major depressive disorder." Tr. 993. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 994. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) with lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to 6 hours, and sitting up to 6 hours in an 8-hour workday except occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; no climbing ladders, ropes, and scaffolds; frequent exposure to vibrations; and frequent exposure to hazardous conditions, including unprotected heights and moving machinery.

Tr. 995. The ALJ determined that Plaintiff could not perform any past relevant work, including work as a licensed practical nurse (DOT[3] #079.374-014), but could perform other jobs that existed

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

in significant numbers in the national economy. Tr. 1000. Therefore, the ALJ concluded that Plaintiff was not disabled from the alleged onset date to the date last insured. Tr. 1001.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's evaluation of her severe fibromyalgia is unsupported by substantial evidence for several reasons. ECF 12-2, at 9–30. First, Plaintiff avers that the ALJ committed reversible error by failing to determine at step three whether her severe fibromyalgia was medically equivalent to a listed disorder in the Listing of Impairments (the "Listings") at 20 C.F.R. Part 404, Subpart P, Appendix 1, as required by Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012). *Id.* at 9–18. Second, Plaintiff contends that the ALJ erred in determining her RFC by: (1) relying on objective medical findings to disprove her allegations of fibromyalgia pain; (2) discounting her fibromyalgia symptoms based her "limited treatment modalities"; and (3) finding her activities of daily living to be consistent with the ability to perform a full-time job. *Id.* at 18–30.

Defendant counters that the ALJ was not required to perform a "point-by-point articulation" of each potentially relevant listed disorder at step three and that, in any event, "the evidence here did not support a presumptively disabling impairment" with regard to Plaintiff's fibromyalgia. ECF 14-1, at 11–13. Defendant further contends that the ALJ permissibly weighed Plaintiff's subjective complaints against objective medical evidence of her fibromyalgia and properly considered evidence of her treatment and daily activities. *Id.* at 6–8.

The Court first considers Plaintiff's argument that the ALJ erred at step three by failing to assess whether her fibromyalgia was medically equivalent to a listed impairment. At step three, an ALJ determines whether a claimant's impairments are severe enough to meet or medically equal a particular Listing. *See* 20 C.F.R. § 404.1525; *see also id.* § 404.1526(a) (noting that an impairment "is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment"). The Listings "describe[ ] for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent

an individual from doing any gainful activity . . . ." *Figgs v. Saul*, No. JMC-20-334, 2021 WL 3930708, at *5 (D. Md. Sept. 2, 2021) (quoting 20 C.F.R. § 404.1525(a)). "In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). Relevant to this case, SSR 12-2p directs an ALJ to "determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2p, 2012 WL 3104869, at *6; *see also id.* (noting that fibromyalgia cannot "meet a listing in appendix 1 because [it] is not a listed impairment").

However, "the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.*; *see also Angela C. v. Kijakazi*, No. TJS-21-0349, 2022 WL 601098, at *2 (D. Md. Mar. 1, 2022) ("An ALJ is not required to discuss every possible listing that might apply to a claimant, but if the 'medical record includes a fair amount of evidence' that a claimant's impairment meets a listing, the ALJ must discuss the relevant listing and provide a coherent explanation regarding whether the claimant's impairments meet or equal it." (quoting *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013))). Ultimately, the burden of proof is on the claimant to show that she meets all of the specified medical criteria of a given listing at step three. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Here, the ALJ determined that Plaintiff's fibromyalgia was a severe impairment, Tr. 992, and provided the following analysis of this impairment at step three:

> As discussed in SSR 12-2p, fibromyalgia is not a listed impairment, but it can medically equal a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or meet or medically equal a listing in combination with at least one other medically determinable impairment. The probative evidence does not suggest fibromyalgia equals a listing or meets/equals a listing in combination.

Tr. 995. Plaintiff contends that this analysis constituted error because "there is ample evidence of record to demonstrate [the] medical equivalence of several listings." ECF 12-2, at 13. Specifically, Plaintiff contends that her fibromyalgia is medically equal to "six separate immune system disorders" contained in the Listings: systemic lupus erythematosus, systemic vasculitis, systemic sclerosis (scleroderma), undifferentiated and mixed connective tissue disease, inflammation or deformity in one or more major joints of an upper or a lower extremity (inflammatory arthritis), and Sjögren's syndrome. *Id.* at 15. Plaintiff correctly notes that each of these listed disorders "require[s] the same functional criteria to establish presumptive disability"; namely, the "[i]nvolvement of two or more organs [or] body systems, with . . . [o]ne of the organs [or] body systems involved to at least a moderate level of severity" and "[a]t least two of the

constitutional symptoms or signs[.]"[4] *Id.* at 15–16 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1402(A), 1403(A), 1404(A), 1406(A), 14.09(B), 14.10(A)). Plaintiff contends that these listed impairments are medically equivalent to her severe fibromyalgia because "[t]here is evidence of involvement of at least two body systems, as the record confirms involvement of [her] musculoskeletal and mental body systems with at least one of those body systems involved to a moderate level of severity," and "[t]here is also ample evidence documenting at least two of the constitutional symptoms or signs[.]" *Id.* at 16.

Plaintiff's argument is unavailing because she fails to fully explain how any of these disorders are medically equivalent to her fibromyalgia. Plaintiff correctly notes that the disorders share certain characteristics with fibromyalgia in terms of body system involvement and symptoms. *Id.* at 15. To be sure, some of these characteristics also appear to be consistent with Plaintiff's medical history. Given this, if the commonality between fibromyalgia and the functional criteria that Plaintiff identifies were the end of the Court's inquiry, Plaintiff's argument might be persuasive. However, Plaintiff fails to address other criteria relevant to the disorders she identifies—namely, the instructions for the documentation and evaluation of listed autoimmune disorders set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1400(D). Therein, the SSA provides definitional criteria for each of the autoimmune disorders Plaintiff cites. But Plaintiff fails to explain how any of these criteria are met by the evidence in this case. For example, the SSA defines "systemic vasculitis," cited by Plaintiff as a disorder equivalent to her fibromyalgia, as "an inflammation of the blood vessels" which is confirmed through angiography or tissue biopsy. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1400(D)(2). But Plaintiff does not suggest that she suffered from inflamed blood vessels. Plaintiff also contends that scleroderma is medically equivalent to her fibromyalgia. But, while the "clinical hallmark" of scleroderma is the "thickening of the skin," *id.* § 1400(D)(3), Plaintiff points to no skin-related symptoms in the record.

Plaintiff's argument with respect to the other four allegedly relevant disorders she identifies is likewise deficient. As such, I am unable to determine whether "there is ample evidence in the record" that would have required the ALJ to identify all listed impairments relevant to Plaintiff's fibromyalgia. *Ketcher*, 68 F. Supp. 2d at 645. Plaintiff's failure to identify the evidence relevant to the Listings she cites is fatal to her argument, as "[t]he claimant has the burden of proving that her impairments meet or medically equal a listed impairment." *Angela C.*, 2022 WL 601098, at *2 (citing *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). Moreover, the detailed analysis of Plaintiff's fibromyalgia treatment and symptoms provided by the ALJ during the RFC assessment (discussed in greater detail below) suggests that the ALJ adequately considered whether Plaintiff's fibromyalgia met or equaled relevant Listings.[5] Given this, I cannot find that the record contains

---

[4] Plaintiff mentions in passing that Listing 1.15 is also "relevant" to her fibromyalgia, but she does not appear to argue that her fibromyalgia is medically equivalent to this Listing. ECF 12-2, at 14–15. As such, the Court does not analyze Plaintiff's argument with respect to this Listing.

[5] Indeed, the ALJ noted that Plaintiff's "complaints were assessed as likely not representing a connective tissue disease." Tr. 997. This undermines Plaintiff's argument that the ALJ failed to consider whether her fibromyalgia was equivalent to undifferentiated and mixed connective tissue

any "significant indication" that Plaintiff suffered from a medically equivalent impairment which the ALJ failed to address. *See Ketcher*, 68 F. Supp. 2d at 645. As such, the ALJ's step-three analysis does not warrant remand.

Plaintiff next raises a series of arguments related to the ALJ's evaluation of her fibromyalgia symptoms in the context of the RFC determination. ECF 12-2, at 18–29. First, Plaintiff avers that the ALJ impermissibly relied upon objective medical findings to "discount [her] subjective complaints regarding symptoms of fibromyalgia." *Id*. at 20 (emphasis deleted) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020)). In *Arakas*, the Fourth Circuit found that the ALJ "improperly discredited [a claimant's] statements about the severity, persistence, and limited effects of her symptoms because he did not find them to be 'completely consistent with the objective evidence.'" *Arakas*, 983 F.3d at 96 (internal citations omitted). "Because [the claimant] was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,' the ALJ 'applied an incorrect legal standard' in discrediting her complaints based on the lack of objective evidence corroborating them." *Id.* (internal citations omitted). The Fourth Circuit thus concluded that the ALJ "'improperly increased her burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)). "This type of legal error is particularly pronounced in a case involving fibromyalgia—a disease whose 'symptoms are entirely subjective,' with the exception of trigger-point evidence[.]" *Id.* (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). At the same time, however, "a claimant's allegations about her pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably be expected to cause the pain the claimant alleges she suffers." *Craig*, 76 F.3d at 595.

A careful reading of the ALJ's decision distinguishes this case from *Arakas*. Here, in addressing Plaintiff's fibromyalgia, the ALJ provided detailed synopses of Plaintiff's primary care and pain management appointments from 2015 to 2018 and discussed fibromyalgia-related findings which were noted during these appointments. Tr. 997–98. The ALJ noted objective findings which were supportive of the limiting effects of Plaintiff's fibromyalgia, *see, e.g.*, Tr. 997 ("Her spinal imaging showed a small central disc herniation at L5-S1, a small bulging annulus at L4-L5, and mild impingement of the left S1 nerve root."); *id.* ("She exhibited spinal tenderness to palpation . . . ."), and they also recognized that other treatment records indicated normal findings. *See, e.g., id.* ("She exhibited full range of motion, reflexes, and intact sensation . . . ."); Tr. 998 (noting that, during appointments in May and November 2018 for fibromyalgia flares, Plaintiff's "examinations were generally unremarkable").

The ALJ also considered Plaintiff's subjective complaints related to fibromyalgia. *See, e.g.*, Tr. 996 ("She testified that she subsequently developed more diffuse pain. She testified that she had had about 4 good days and 26 bad days a month. She reported having body aches and

---

disease at step three. ECF 12-2, at 15.

feeling like she wanted to stay in bed."); Tr. 997 (noting that, in 2012, Plaintiff "reported shakiness, but denied lower extremity numbness"); *id.* (noting that, in 2012, Plaintiff reported low back, right hip, leg, and ankle pain). To be sure, some subjective complaints that the ALJ noted were indicative of a lesser level of pain. *See, e.g., id.* (noting that, in 2015, Plaintiff "received transforaminal epidural steroid injections and endorsed pain reduction"). However, the ALJ found some of Plaintiff's fibromyalgia complaints compelling enough to warrant specific RFC limitations—he explicitly noted that Plaintiff's "complaints of instability and weakness support finding her unable to safely climb ladders, ropes, and scaffolds and limited to frequent exposure to vibrations and hazardous conditions." Tr. 998. Based upon this analysis, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

In light of this analysis, Plaintiff's contention that the ALJ improperly discounted her subjective complaints is without merit. Contrary to Plaintiff's assertions—and particularly in view of the subjective complaints that the ALJ found persuasive—the ALJ's discussion makes clear that they formulated the RFC taking into account the longitudinal evidence of Plaintiff's treatment history. This remains permissible under *Arakas*. *See Mahot v. Kijakazi*, No. 3:21-CV-114-MOC, 2022 WL 893111, at *4 (W.D.N.C. Mar. 25, 2022) (distinguishing *Arakas* and affirming an ALJ's decision where the ALJ considered the claimant's own prior statements, treatment records, statements from medical sources, and objective evidence and incorporated some limitations due to fibromyalgia into the RFC but ultimately concluded that the claimant was not disabled); *Stiles v. Comm'r of Soc. Sec.*, No. 1:21-CV-00085-RJC, 2022 WL 3256876, at *6 (W.D.N.C. Aug. 10, 2022) (distinguishing *Arakas* and affirming an ALJ's decision where the ALJ incorporated limitations in the RFC to accommodate the claimant's symptoms of severe fibromyalgia); *Heather R. v. Saul*, No. 4:20-CV-04082-VLD, 2021 WL 3080331, at *20 (D.S.D. July 21, 2021) (affirming an ALJ's decision where the ALJ "consider[ed] all the longitudinal evidence, which includes objective medical evidence as well as [the claimant's] daily activities," and "incorporated significant limitations into her RFC on account of those [fibromyalgia] symptoms").

Plaintiff further contends that the ALJ erred by "relying on the type of treatment [she] received as a basis to reject the severity, persistence, and limiting effects of her fibromyalgia symptoms," but this argument is also unavailing. ECF 12-2, at 23–24. Specifically, Plaintiff avers that the ALJ discounted evidence of her limitations "based on the inaccurate belief that Plaintiff's limitations 'exceed [her] treatment history[.]'" *Id.* at 24 (citing Tr. 999–1000) (alteration in original). Plaintiff misconstrues this portion of the ALJ's decision. Rather than discounting Plaintiff's symptoms based on treatment, the ALJ merely determined that a physician's assessment regarding Plaintiff's work abilities was unpersuasive because its opined limitations "exceed[ed] [Plaintiff's] treatment history"; in other words, Plaintiff's ability to walk and exercise "following [her] treatment" was indicative of greater abilities than those opined by the treating physician. Tr. 999–1000. Such an analysis does not, as Plaintiff suggests, amount to a rejection of Plaintiff's symptoms. Plaintiff also appears to suggest that the ALJ "discredited [her] for failing to pursue non-conservative treatment options" for fibromyalgia. ECF 12-2, at 24 (quoting *Lapeirre-Gutt v.*

*Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)). According to Plaintiff, the ALJ did so by noting that Plaintiff "was provided Lyrica for her fibromyalgia" and was recommended treatment in the form of weight loss and increased physical activity. *Id.* (citing Tr. 997–98). But, aside from noting these treatments, the ALJ did not suggest that they found Plaintiff's treatment for fibromyalgia to be inappropriate or too conservative. As such, remand is not warranted on this basis.

Lastly, Plaintiff argues that the ALJ erroneously "cited [her] ability to sporadically engage in activities of daily living performed at her own pace and in her own way as substantial evidence that she has the functional capacity to work on a full-time basis." *Id*. at 28. Despite this contention, I find that the ALJ's evaluation of Plaintiff's daily activities was supported by substantial evidence. In their decision, the ALJ noted Plaintiff's abilities, following treatment, to "walk, exercise, do yardwork, cook, clean, and do laundry. She also reported being able to travel on foot, shop for groceries, and perform some yardwork." Tr. 998 (noting that "physical therapy had improved [Plaintiff's] ability to engage in activities of daily living"). Based upon these abilities, the ALJ found Plaintiff to be "capable of lifting, carrying, sitting, standing, and walking at the light level and occasionally stooping, kneeling, crouching, crawling, and climbing ramps and stairs." *Id.* To be sure, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original) (citing *Brown v. Comm'r*, 873 F.3d 251, 263 (4th Cir. 2017)).

But here, the ALJ's analysis of Plaintiff's activities did not fail to consider the extent to which Plaintiff could perform these activities. Rather, the ALJ based their conclusion regarding Plaintiff's subject complaints of pain on objective medical evidence in the record as well as Plaintiff's own statements, including qualifying statements regarding the extent to which she can perform activities of daily living. *See* Tr. 996 ("She stated that she was unable to get out of bed some days. She reported having flares in which she needed help with personal care, but noted that she could otherwise bathe, dress, and care for her hair independently."); *id.* ("She indicated that she had difficulty doing yardwork and often felt worse the day after doing yardwork."); Tr. 997 ("She estimated that she was accomplishing her goals at 50% with regard to walking, exercising, yardwork, cooking, and cleaning."). Moreover, the record provides further support for the ALJ's analysis and belies Plaintiff's assertion that her daily activities were minimal. *See, e.g.*, Tr. 721 (noting, in 2019, that Plaintiff "engage[s] in self-directed exercise, such as stretches," "uses the Gazelle and uses this with no resistance and has lost 12 lbs. in the last month," and "is also active playing with her children outside taking walks and playing basketball"). Accordingly, I find that the ALJ's assessment of Plaintiff's daily activities was supported by substantial evidence.

V.     **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 12, is DENIED and Defendant's motion for summary judgment, ECF 14, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

*Angela W. v. Kijakazi*
Civil No. 22-1763-BAH
June 2, 2023
Page 9

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge